Stephen B. Watkins, Bar Number 3400
Armand J. Howell, Bar Number 10029
Benjamin J. Mann, Bar Number 12588
Paul M. Halliday, Jr., Bar Number 5076
HALLIDAY, WATKINS & MANN, P.C.
Attorneys for U.S. Bank, National Association,
as Trustee for the EMC Mortgage Loan Trust
2003-B, Mortgage Pass-through Certificates
Series 2003-B
376 East 400 South, Suite 300
Salt Lake City, UT 84111
Telephone:  801-355-2886
Fax:  801-328-9714
Email: armand@hwmlawfirm.com
File No:  50547

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>MARK R KIRKLAND<br><br>Debtor. | Bankruptcy Case No. 17-26260 JTM<br>Chapter 13<br><br>**MOTION TO TERMINATE AUTOMATIC STAY AND CO-DEBTOR STAY AS TO U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE EMC MORTGAGE LOAN TRUST 2003-B, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2003-B**<br><br>[Filed Electronically] |

U.S. Bank, National Association, as Trustee for the EMC Mortgage Loan Trust 2003-B,

Mortgage Pass-through Certificates Series 2003-B, hereinafter referred to as ("Secured

Creditor"), hereby moves the Court pursuant to 11 U.S.C., Section 362 and 1301, for an order

terminating the automatic stay and relief from the co-debtor stay with respect to the following

described real property (the "property") located in Salt Lake County, State of Utah:

> Lot 15, Stone Ridge, according to the official plat thereof recorded
> in the office of the County Recorder of Salt Lake County;
> Commonly known as 10044 South Stone Mountain Place, Sandy,
> UT 84092;

so that it may proceed to foreclose its security interest in the property.  This motion is based on

the following.

1.    That on or about October 25, 1999, Debtor and Co-Debtor executed their Note

and Trust Deed, which Note and Trust Deed are in default.  Secured Creditor is the current

beneficiary of the Trust Deed.  Copies of the Note, Trust Deed, and Assignment of Trust Deed

are attached hereto.

2.    That Debtor has not made his post-petition monthly payments as required by his

plan and as of October 10, 2017, is in arrears three post-petition payments being from August 1,

2017 to October 1, 2017.

3.    That Debtor has failed to provide Secured Creditor with adequate protection of its

interest in the property.

4.    That Debtor has no realizable equity in the property.

5.    Susan Kirkland is a co-debtor on the subject note and trust deed.

6.    That the above allegations constitute sufficient cause pursuant to 11 U.S.C.,

Section 362(d) entitling Secured Creditor to an order terminating the automatic stay and relief

from the co-debtor stay so that Secured Creditor may proceed to foreclose its security interest to

satisfy its claim.

7.    That Secured Creditor is entitled to its reasonable attorney's fees, costs and

expenses for bringing this motion in accordance with its note and trust deed.

8.    With respect to Rule 4001(a)(3), the Court should allow immediate enforcement

of any order for relief granted herein.

9.    Select Portfolio Servicing, Inc. services the loan on the Property referenced in this Motion.  In the event the automatic stay in this case is modified, this case dismissed, and/or the Debtors obtain a discharge and a foreclosure action is commenced on the mortgage property, the foreclosure will be conducted in the name of the Secured Creditor.  Secured Creditor directly or through an agent, is the owner and holder of the Note.  The Note is either made payable to Secured Creditor or has been duly endorsed.

WHEREFORE, Secured Creditor moves the Court for the following relief:

1.    That the evidentiary hearing to be held within thirty (30) days of the date of this motion, in accordance with 11 U.S.C., Section 362 and 1301, be the final evidentiary hearing on this matter;

2.    That the automatic stay pursuant to 11 U.S.C., Section 362 and the co-debtor stay pursuant to 11 U.S.C., Section 1301, be modified and terminated to permit Secured Creditor to immediately exercise its rights and remedies under applicable state and federal law;

3.    For attorney's fees, costs and expenses and such further or other relief as the Court deems appropriate;

4.    Any order based on stipulation governing the continuation and termination of the automatic stay or any order granting relief from the automatic stay should not be amended or altered or superseded by the confirmation order entered in this case but should be considered a part of and integrated into the confirmation order.  Further, if the automatic stay is terminated prior to confirmation, the automatic stay should not be reimposed by the entry of the confirmation order;

5.    Secured Creditor seeks relief in order to, at its option, offer, provide and enter into

any potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement.  Any such agreement shall be non-recourse unless included in a reaffirmation agreement.  Secured Creditor further requests that it be allowed to contact the debtor via telephone or written correspondence to offer such an agreement.

DATED this 18th day of October, 2017.

 /s/ Armand J. Howell
Armand J. Howell
Attorney for Secured Creditor

# DEED OF TRUST

## Washington Mutual

Loan No. ▮▮▮▮▮▮▮

INDEPENDENCE TITLE INSURANCE AGENCY 99-1381

AFTER RECORDING, MAIL TO:

Washington Mutual Bank fsb
C/O DATA PLEX
19031 33RD AVE WEST - MS116DPWA
LYNNWOOD, WA 98036

7499612
10/28/1999 08:57 AM 26.00
NANCY WORKMAN
RECORDER, SALT LAKE COUNTY, UTAH
INDEPENDENCE TITLE
BY: RDJ, DEPUTY - WI 9 P.

[Space Above This Line For Recording Data]

## DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on _____October 25, 1999_____ . The trustor is
MARK KIRKLAND AND SUSAN KIRKLAND, HUSBAND AND WIFE

("Borrower"). The trustee is __INDEPENDENCE TITLE INSURANCE AGENCY, a Utah corporation__
_____("Trustee"). The beneficiary is ____Washington Mutual Bank fsb____
_____, which is organized and existing under the laws of ___USA___ , and whose address is
__1201 Third Avenue Seattle, WA 98101__ ("Lender"). Borrower owes Lender the
principal sum of __Five Hundred Ten Thousand Eight Hundred & 00/100__
_____ Dollars (U.S. $510,800.00 ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on ___November 1, 2029___ . This
Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all
renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under
paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and
agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to
Trustee, in trust, with power of sale, the following described property located in _____Salt Lake_____ ,
County, Utah:

LOT 15, STONE RIDGE, ACCORDING TO THE OFFICIAL PLAT THEREOF RECORDED IN THE
OFFICE OF THE COUNTY RECORDER OF SALT LAKE COUNTY.

which has the address of __10044 SOUTH STONE MOUNTAIN PLACE__ , __SANDY__
                                                [Street]                                              [City]
Utah ___84092___ ("Property Address");
        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to
grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower
warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances
of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UTAH - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                              Form 3045  9/90

Page 1 of 4

UNIFORM COVENANTS.   Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.**   Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.**   Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.**   Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.**   Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.**   Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.**   Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.**   If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.**   If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and

BK8319P60603

retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the

BK8319PG0604

date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the power of sale is invoked, Trustee shall execute a written notice of the occurance of an event of default and of the election to cause the Property to be sold, and shall record such notice in each county in which any part of the Property is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may in accordance with applicable law, postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county clerk of the county in which the sale took place.

22. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

23. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

24. **Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address

25. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] 1-4 Family Rider |
| [ ] Graduated Payment Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |
| [ ] Other(s) [specify] | | |

BY SIGNING BELOW, BORROWER accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

x _Mark R Kirkland_
MARK KIRKLAND

x _Susan Kirkland_
SUSAN KIRKLAND

STATE OF UTAH,                    }
                                 } ss:
County of   SALT LAKE            }

On this   25TH   day of   OCTOBER, 1999                    , personally appeared before me MARK KIRKLAND and SUSAN KIRKLAND

the signer(s) of the above instrument, who duly acknowledged to me that _he/she/they_ executed the same.

My Commission Expires:

Notary Public
SCOTT SILER
674 East 7800 South
Midvale, UT 84047
My Commission Expires
October 10, 2001
State of Utah

Notary Public residing at:

REQUEST FOR RECONVEYANCE

TO TRUSTEE:
The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

DATED: _____

_____ a corporation

By _____

Mail reconveyance to _____

BK8319PG0605

**█ Washington Mutual**

**ADJUSTABLE RATE RIDER**
**(12-MTA Index - Payment and Rate Caps)**

THIS   ADJUSTABLE   RATE   RIDER   is-   made   this   ___25th___   day   of
__October, 1999_____, and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the
same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate
Note (the "Note") to _____Washington Mutual Bank fsb_____
(the "Lender") of the same date and covering the property described in the Security
Instrument and located at:

<u>        10044 SOUTH STONE MOUNTAIN PLACE, SANDY, UT 84092        </u>
(Property Address)

THIS RIDER CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST
RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES WILL
HAVE LIMITS WHICH COULD RESULT IN THE PRINCIPAL AMOUNT I MUST REPAY
BEING LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE
THAN __125%__ OF THE ORIGINAL AMOUNT (OR $____638,500.00____).
MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THE NOTE AND
RIDER. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    Interest will be charged on unpaid principal until the full amount of principal has been
paid. I will pay interest at a yearly rate of __3.450__%. The interest rate I will pay will
change in accordance with Section 4 of the Note.
    Section 4 of the Note provides for changes in the interest rate and the monthly
payments as follows:

32843 (02-99)                          Page 1 of 6

BK8319PG0606

"4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

   (A)   **Change Dates**

      The interest rate I will pay may further change on the ___1st___ day of
___December, 1999_____, and on that day every month thereafter. Each
date on which my interest rate could change is called a "Change Date".

   (B)   **The Index**

      Beginning with the first Change Date, my interest rate will be based on an
Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the
annual yields on actively traded United States Treasury Securities adjusted to a constant
maturity of one year as published by the Federal Reserve Board in the Federal Reserve
Statistical Release entitled "Selected Interest Rates (G.13)" (the "Monthly Yields"). The
Twelve-Month Average is determined by adding together the Monthly Yields for the most
recently available twelve months and dividing by 12.

      The most recent Index figure available as of the date 15 days before each
Change Date is called the "Current Index".

      If the Index is no longer available, the Note Holder will choose a new index
which is based upon comparable information. The Note Holder will give me notice of this
choice.

   (C)   **Interest Rate Change**

      Before each Change Date, the Note Holder will calculate my new interest rate by
adding ___Two & Forty-Five-Hundredths_____ percentage
points ___2.450___ % ("Margin") to the Current Index. The Note Holder will then round
the result of this addition to the nearest one thousandth of one percentage point (0.001%).
Subject to the limits stated in Section 4(D) below, this rounded amount will be my new
interest rate until the next Change Date. In the event a new Index is selected, pursuant to
paragraph 4(B), a new Margin will be determined. The new Margin will be the difference
between the average of the old Index for the most recent three year period which ends on
the last date the Index was available plus the Margin on the last date the old Index was
available and the average of the new Index for the most recent three year period which
ends on that date (or if not available for such three year period, for such time as it is
available). The difference will be rounded to the next higher 1/8 of 1%.

32843 (02-99)                    Page 2 of 6

BK8319PG0607

**(D)  Interest Rate Limit**

My interest rate will never be greater than ____10.950____ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

**(E)  Payment Change Dates**

Effective every year commencing ____December 1, 2000____, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected principal balance I am expected to owe as of the Payment Change Date in full on the maturity date at the interest rate in effect 45 days prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of the Note.

**(F)  Monthly Payment Limitations**

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 1/2% more or less than the amount I have been paying.

**(G)  Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization**

Since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the maturity date in substantially equal payments. For each month that the monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will add the difference to my unpaid principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the excess towards a principal reduction of the Note.

**(H)  Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to ____125%____ of the principal amount original borrowed. In the event my unpaid principal would otherwise

32843 (02-99)                                Page 3 of 6

BK8319PG0608

exceed that ___125%___ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 1/2% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid principal in full on the maturity date at my interest rate in effect the month prior to the payment due date in substantially equal payments.

   (I)   **Required Full Monthly Payment**

      On the ___FIFTH___ anniversary of the due date of the first monthly payment, and on that same day every ___FIFTH___ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

   (J)   **Notice of Changes**

      The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

   (K)   **Failure to Make Adjustments**

      If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid "Principal."

**B.**    **TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

   Covenant 17 of the Security Instrument is amended to read as follows:

      Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not

BK8319PG0609

exercise this option if:  (a) the request to assume is made after one year following recordation of the Deed of Trust, (b) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; (c) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Agreement or other obligations related to the Note or other loan document is acceptable to Lender, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (e) payment of Assumption Fee if requested by Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption, and Lender may increase the maximum interest rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written assumption agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

32843 (02-99)                          Page 5 of 6

BK0319PG0611

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider. Borrower agrees to execute any document necessary to reform this Agreement to accurately reflect the terms of the Agreement between Borrower and Beneficiary or if the original Note, Trust Deed or other document is lost, mutilated or destroyed.

x _Mark & Kirkland_____
MARK KIRKLAND

x _Susan Kirkland_____
SUSAN KIRKLAND

32843 (02-99)                    Page 6 of 6

BK8319PG0610

# NOTE

**Washington Mutual** 

PNOTE

INDEPENDENCE TITLE AGENCY HEREBY CERTIFIES THAT THIS
DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL

SIGNATURE _____

ESCROW OFFICER

## ADJUSTABLE RATE NOTE
### (12-MTA Index - Payment and Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST
RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES WILL
HAVE LIMITS WHICH COULD RESULT IN THE PRINCIPAL AMOUNT I MUST REPAY
BEING LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE
THAN ___125%___ OF THE ORIGINAL AMOUNT (OR $ ___638,500.00___ ).
MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THIS NOTE OR
ANY RIDER TO THIS NOTE. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

_____MIDVALE_____Utah_____
       (City)                (State)

_____October 25, 1999_____

____10044 SOUTH STONE MOUNTAIN PLACE, SANDY, UT 84092_____
             (Property Address)

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ ___510,800.00___
plus any amounts added in accordance with Section 4 (G) below, (this amount is called "principal"),
plus interest, to the order of the Lender. The Lender is ___Washington Mutual Bank fsb___ .
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by
transfer and who is entitled to receive payments under this Note is called the "Note Holder".

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount has been paid. I will pay
interest at a yearly rate of ___3.450___ %. The interest rate I will pay will change in accordance with
Section 4 of this Note.

    The interest rate required by this Section 2 and Section 4 of this Note is the rate I will
pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month. In this Note, "payments"
refer to principal and interest payments only, although other charges such as taxes, insurance
and/or late charges may also be payable with the monthly payment.

I will make my monthly payments on ___1st___ day of each month beginning on
___December, 1999_____ , I will make these payments every month until I have paid all of
the principal and interest and any other charges described below that I may owe under this Note.
My monthly payments will be applied to interest before principal. If, on
___November 1, 2029_____ , I still owe amounts under this Note, I will pay those amounts in
full on that date, which is called the "maturity date".

I will make my monthly payments at ___P.O. BOX 91006 - SAS0702, SEATTLE, WA___
___98111_____ , or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my monthly payments until the first Payment Change Date will be in the amount of
U.S. $ ___2,279.49___ , unless adjusted at an earlier time under Section 4(H) of this Note.

**(C)  Payment Changes**

My monthly payment will be recomputed, according to Sections 4(E)(F)(G)(H) and (I) of this Note, to reflect changes in the principal balance and interest rate that I must pay.  The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4.      **INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A)  Change Dates**

The  interest rate I will pay may further change on the ___1st___ day of ___December, 1999___, and on that day every month thereafter.  Each date on which my interest rate could change is called a "Change Date".

**(B)  The Index**

Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (G. 13)" ("the Monthly Yields").  The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as of 15 days before each interest rate Change Date is called the "Current Index".  If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

**(C)  Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding ___Two & Forty-Five-Hundredths___ percentage points ___2.450___ % ("Margin") to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001%).  Subject to the limits stated in Section 4(D) below,  this rounded amount will be my new interest rate until the next Change Date.  In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined.  The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available).  This difference will be rounded to the next higher 1/8 of 1%.

**(D)  Interest Rate Limit**

My interest rate will never be greater than ___Ten & Ninety-Five-Hundredths___ percentage points ___10.950___ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

**(E)  Payment Change Dates**

Effective every year commencing ___December 1, 2000___, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected principal balance I am expected to owe as of the Payment Change Date in full on the maturity date at the interest rate in effect 45 days prior to the Payment Change Date in substantially equal payments.  The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of this Note.

**(F)  Monthly Payment Limitations**

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 1/2% more or less than the amount I have been paying.

**(G)  Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization**

Since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly

payment could be less or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the maturity date in substantially equal payments. For each month that the monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will ad the difference to my unpaid principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the excess towards a principal reduction of the Note.

**(H)  Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to ___125%___ of the principal amount original borrowed. In the event my unpaid principal would otherwise exceed that ___125%___ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 1/2% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid principal in full on the maturity date at my interest rate in effect the month prior to the payment due date in substantially equal payments.

**(I)  Required Full Monthly Payment**

On the ___FIFTH___ anniversary of the due date of the first monthly payment, and on that same day every ___FIFTH___ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

**(J)  Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(K)  Failure to Make Adjustments**

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

**5.     BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will apply all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may have the effect of reducing the amount of my monthly payments, but only after the first Payment Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**6.     LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**Miscellaneous Fees:** I understand that the Note Holder will also charge a return item charge in the event a payment that I make in connection with repayment of this loan is not honored by the financial institution on which it is drawn. The current fee is $___15.00___ . Lender reserves the right to change the fee from time to time without notice except as may be required by law.

**7.      BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of ___Fifteen___ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be ___5.000___ % of my overdue payment of principal and interest. I will pay this late charge promptly but only once of each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 10 days after the date on which the notice is delivered or mailed to me (or, if the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation buys all or part of Lender's rights under the Security Instrument, in which case the notice will specify a date, not less than 30 days from the date the notice is given the Borrower).

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.      GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.      OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed ( the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate *payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:*

**Transfer of the Property or a Beneficial Interest in Borrower.**

If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by *Lender if exercise is prohibited by federal law as of the date of this Security Instrument.* Lender also shall not exercise this option if: (a) the request to assume is made after one year following recordation of the Deed of Trust, (b) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (c) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument or other obligations related to the   Note or other loan *document is acceptable to Lender*, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (e) payment of Assumption Fee if requested by Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption and Lender may increase the maximum rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written Assumption Agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12.      MISCELLANEOUS PROVISIONS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

x _Mark RKirkland_____
MARK KIRKLAND

x _Susan Kirkland_____
SUSAN KIRKLAND

PAY TO THE ORDER OF

WITHOUT RECOURSE
WASHINGTON MUTUAL BANK, FSB

Jess Almanza, AVP

32858 (02-99)                    Page 6 of 6

**ALLONGE**

Tracking#: ███████

Deal: EMC-WAM8

This Allonge is attached to and made part of that certain Promissory note:

Dated:        10/25/1999

Executed By:  MARK KIRKLAND AND SUSAN KIRKLAND, HUSBAND AND
              WIFE

Original amount:  $510,800.00

It is to be read together with, and is hereby incorporated by reference in, the attached
instrument, and constitutes an integral part thereof.

PAY TO THE ORDER OF

EMC Mortgage Corporation

WITHOUT RECOURSE

WASHINGTON MUTUAL BANK, FA

By: _____

Name:  Angela Shepard
Title:   Assistant Vice President

# ASSIGNMENT

10376639

10376639
03/19/2008 09:49 AM $14.00
Book - 9583 Pg - 7317-7319
GARY W. OTT
RECORDER, SALT LAKE COUNTY, UTAH
DOCX LLC
1111 ALDERMAN DR STE 350
ALPHARETTA GA 30005
BY: TMW, DEPUTY - MA 3 P.

Record & Return To:
Docx, LLC
1111 Alderman Dr., Ste. 350
Alpharetta, GA 30005

EMCA A015

### Assignment of Deed of Trust

For Value Received, WASHINGTON MUTUAL BANK, FA, the undersigned holder of a(n) Deed of Trust  (herein 'Assignor') whose address is 400 East Main Street,  Stockton, CA 95290, does hereby grant, sell, assign, transfer and convey, without recourse unto EMC Mortgage Corporation (herein 'Assignee') whose address is 909 Hidden Ridge Drive,  Irving, TX 75038, without recourse, representation or warranty, all beneficial interest under a certain Deed of Trust dated 10/25/1999, made and executed by Borrower(s): MARK KIRKLAND AND SUSAN KIRKLAND, HUSBAND AND WIFE in which Deed of Trust is of record in:

*SEE Attach Legal Description*

Book/Volume:        **8319**                    Page No.: **602**
Instr/Ref:          **7499612**
Parcel/Tax ID#:
Township/Borough:
Trustee (if DOT):   **INDEPENDENCE TITLE INSURA**
Original Loan Amou   **$510,800.00**
Original Lender:    **WASHINGTON MUTUAL BANK, FSB**


District:          Section:           Block:            Lot(s):
Prop. Add (if available): 10044  S STONE MOUNTAIN PLA, SANDY, UT  84092


which was recorded on 10/28/1999 in Salt Lake (County or Town, whichever is applicable) in the state of UT, together with the note or bond secured thereby, the note or bond evidencing said indebtedness having this date been transferred together with Assignor's right, title and interest in and to said Mortgage, all without recourse, or warranty, the property herein described and the indebtedness thereby secured.



BK 9583 PG 7317



Page 2    Tracking #: ▉▉▉▉

All other existing legal or equitable rights, interests and remedies in or with respect to the Mortgage and/or the Note and/or the proceeds thereof, including, but not limited to, escrow deposits, existing title insurance policies and hazard insurance policies, as well as causes of action and judgements related thereto.

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Deed of Trust.

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered, effective December 27, 2002.

WASHINGTON MUTUAL BANK, FA

By: _____
Name: Angela Shepard
Title:  Assistant Vice President

State of California
County of San Joaquin

On May 23, 2003, before me, the undersigned Notary Public in and for said State, personally appeared Angela Shepard, known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument who acknowledged that he/she is the authorized Assistant Vice President for WASHINGTON MUTUAL BANK, FA and whose address is 400 East Main Street, Stockton, CA 95290, and who acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person or the entity on behalf of which the person acted, executed the instrument.

Witness My Hand and Official Seal.

Notary Public: _____  Jennifer Fugate
My commission expires:  03/04/07

JENNIFER FUGATE
Commission # 1403654
Notary Public - California
San Joaquin County
My Comm. Expires Mar 4, 2007

Prepared By: RCG, Inc., 505 A San Marin Dr., Novato, CA 94945, (415)898-7200; M. Brychcova_____

▉▉▉▉▉

LOT 15, STONE RIDGE, ACCORDING TO THE OFFICIAL PLAT THEREOF RECORDED IN THE
OFFICE OF THE COUNTY RECORDER OF SALT LAKE COUNTY.

11376606

11376606
4/24/2012 2:13:00 PM $10.00
Book - 10011 Pg - 271
Gary W. Ott
Recorder, Salt Lake County, UT
SCALLEY & READING BATES HANSEN
BY: eCASH, DEPUTY - EF 1 P.

ELECTRONICALLY RECORDED FOR:
SCALLEY READING BATES
HANSEN & RASMUSSEN
15 West South Temple, Ste 600
Salt Lake City, Utah 84101
Trustee No.
Parcel No.

### NOTICE OF ASSIGNMENT OF DEED OF TRUST

EMC Mortgage LLC, formerly known as EMC Mortgage Corporation hereby gives notice that it has assigned to U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association as Trustee as successor by merger to LaSalle Bank National Association as Trustee for certificateholders of EMC Mortgage Loan Trust 2003-B, Mortgage Loan Pass-Through Certificates, Series 2003-B, all beneficial interest under that certain Deed of Trust dated October 25, 1999, executed by Mark Kirkland and Susan Kirkland, as trustor(s), in which Washington Mutual Bank fsb is named as beneficiary, and Independence Title Insurance Agency, a Utah corporation is appointed trustee, and filed for record on October 28, 1999, and recorded as Entry No. 7499612, in Book 8319, at Page 0602, Records of Salt Lake County, Utah, covering the real property described below, and all rights accrued or to accrue under said Deed of Trust.

LOT 15, STONE RIDGE, ACCORDING TO THE OFFICIAL PLAT THEREOF RECORDED IN THE OFFICE OF THE COUNTY RECORDER OF SALT LAKE COUNTY.

DATED this 2 day of *APRIL*, *2012*

EMC Mortgage LLC, formerly known as EMC Mortgage Corporation

By: **Timothy P Long**
    **Vice President**

STATE OF **Ohio**           )
                            : ss
COUNTY OF **Franklin**      )

The foregoing instrument was acknowledged before me this 2nd day of *April*, *2012*, by **Timothy P Long**, the **Vice President** of EMC Mortgage LLC, formerly known as EMC Mortgage Corporation.

*Leslie Adams*
NOTARY PUBLIC *Leslie Adams*

LESLIE ADAMS
Notary Public, State of Ohio
Seneca County
My Commission Expires 6/17/2013

1 of 1